Hillsborough,
No. 4664.

## BROX'S DAIRIES, INC.

*v.*

## BOSTON AND MAINE RAILROAD.

Argued June 4, 1958.

Decided July 1, 1958.

*Hamblett, Kerrigan & Hamblett* (*Mr. Kerrigan orally*), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the defendant.

WHEELER, J. The sole question presented is whether there was error in granting the defendant's motion for a nonsuit. Construing the evidence most favorably to the plaintiff, it could be found that on November 11, 1953, at about 9:15 p. m., the plaintiff's trailer truck operated by one St. Pierre was proceeding easterly on Route 101-A approaching defendant's railroad crossing at a speed of 20 to 25 miles per hour. The operator testified that under ordinary conditions he could see the crossing for at least 100 feet. It was a dark night with intermittent fog. As the truck approached the crossing, there was a very heavy fog bank which extended several hundred feet back. Prior to reaching the crossing, there was a downgrade followed by a gradual curve to the right and a slight upgrade before reaching the tracks. For some distance south of the crossing, the tracks run neary parallel to the highway. When St. Pierre was within fifty to sixty feet from the tracks, he became aware of dark objects crossing the highway which he could not then distinguish. He did not decrease his speed, and when thirty to thirty-five feet from the crossing, he first discovered the objects were moving freight cars. He swung his wheel hard left, locked his brakes, swerved across the highway striking the curbstone, a telephone pole and finally coming to rest against a cemetery fence. The vehicle was not in collision with the train.

St. Pierre had been making similar daily trips over the highway for nine months and was familiar with the crossing although he had never seen a train at that point. He testified he could stop his vehicle in an emergency in approximately forty-five feet traveling at 20 to 25 miles per hour.

The defendant's only train on this line made one round trip daily, up in the day and back at night. The only warning of the crossing was a "crossbuck" warning sign on the left of the road approaching the crossing.

There was evidence that it was the defendant's custom to bring the train to a stop before crossing this intersection, that a horn was sounded which "sounded like an automobile horn," that a flagman with a lantern would get out and protect the crossing until the engine proceeded across and then return to the engine and ride with it.

It is the plaintiff's contention that defendant failed to provide suitable and adequate crossing warnings and was otherwise negligent and that plaintiff's driver was not guilty of contributory negligence as a matter of law.

The plaintiff's driver, familiar with the crossing, admittedly drove into the fog bank without reducing his speed and continued at the same speed after observing indistinguishable objects crossing the highway until thirty-five feet from the railroad crossing when he first discovered the objects were moving freight cars. Due care required that plaintiff's operator "drive at an appropriate reduced speed when approaching and crossing . . . [a] railroad crossing . . . and when special hazard exists . . . by reason of weather or highway conditions." RSA 263:54. This the plaintiff's driver did not do. "It is very much like entering such space with one's eyes closed." *Cole* v. *Morse*, 85 N. H. 214, 217. See also, *Fine* v. *Parella*, 92 N. H. 81; *Tufts* v. *White*, 92 N. H. 158.

The plaintiff was guilty of contributory negligence as a matter of law. Accordingly there is no necessity to consider the issue of defendant's negligence.

*Judgment for the defendant.*

All concurred.